**Lynn BELTON et al., Plaintiff,**

v.

**Leland J. SIGMON, et al., Defendants.**

**No. Civ.A. 97–0053–D.**

United States District Court,
W.D. Virginia,
Danville Division.

Nov. 17, 1998.

Barbara Hudson, Evanston, IL, for plaintiffs.

Linda Davis Frith, Nancy Fuller Reynolds, Frith, Anderson & Peake, Roanoke, VA, for defendants.

## MEMORANDUM OPINION

MOON, District Judge.

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants claim that the plaintiffs are exempt employees under the Fair Labor Standards Act ("FLSA" or the "Act") and are not entitled to overtime pay. Defendants also request summary judgment dismissing plaintiffs' claims of fraud in the inducement; contract unconscionability; and retaliation in violation of the FLSA. For reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment for each Count.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994).

## FACTUAL BACKGROUND

The plaintiffs are all former employees of S & S Healthcare, Inc. ("S & S"). S & S is a Virginia corporation owned and operated by Leland J. Sigmon and Thomas H. Summers. S & S is a franchisee of Interim Health Care, Inc. which is engaged in the business of "providing skilled nursing and daily personal maintenance services to members of the public qualifying under the federal Medicare and state

Medicaid programs, to persons requiring private duty nurses and to medical offices for staffing purposes." Defendants' Motion for Summary Judgment at 3. Plaintiffs Beverly Lynn Belton, Brenda Wade Neely, and Shirley Baumgardner were employed as Home Health Care Supervisors. They were responsible for overseeing the patient care provided by the Certified Nursing Assistants ("CNAs"). Plaintiffs Debra Hall and Kathryn Rebecca Poole were the Office Manager and Assistant Office Manager respectively for S & S's Galax, Virginia office.

## ANALYSIS

### I. The FLSA Claim

The Fourth Circuit has provided a succinct analysis of the test to determine whether an employee is exempt from overtime:

> Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that employees be paid time and a half for work over forty hours a week. Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1), however, provides an exemption from the overtime pay requirement for persons "employed in a bona fide executive, administrative, or professional capacity." Employers must prove by clear and convincing evidence that an employee qualifies for exemption. *Clark v. J.M. Benson Co.,* 789 F.2d 282, 286 (4th Cir. 1986).
>
> Department of Labor regulations define what constitutes employment in an executive or administrative capacity. Two requirements are pertinent here. First, to qualify for the exemption, an employee must be paid "on a salary basis." 29 C.F.R. §§ 541.1(f), 541.2(e) (1992). Second, an employee's primary duty must be either management, administrative, or a combination of the two. *Id.* §§ 541.1(f), 541.2(e), 541.600(a) (1992).

*Shockley v. City of Newport News,* 997 F.2d 18, 21–21 (4th Cir.1993).

### A. JOB DUTIES TEST

■ Plaintiffs Baumgardner, Belton, and Neely were employed as Medicaid Home Health Care Supervisors. Their responsibilities included supervising CNAs to provide care to the patients. In their depositions, they admitted that they were only challenging the defendants' payment policies and not whether their jobs satisfied the job duties test. Exhibits L–4, L–5, M–1, M–2, N–1 to Defendants' Motion for Summary Judgment. Additionally, these plaintiffs describe their jobs as including such responsibilities as fostering public relations; educating professional and lay communities about Interim comprehensive home care; and assisting with development and provision of staff development programs. Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment at 9 ("Plaintiffs' Memorandum"). Plaintiffs Baumgardner, Belton, and Neely are thus employed in a bona fide executive capacity and exempt from the Act's overtime requirements.

Plaintiffs Hall and Poole were the Office Manager and Assistant Office Manager respectively. Defendants assert that Hall and Poole are exempt administrative employees under 29 C.F.R. § 541.2. Since Hall and Poole's salaries exceed $250 per week, the "short test" applies to determine whether they are bona fide administrative employees. *Shockley v. City of Newport News,* 997 F.2d 18, 28 (4th Cir.1993). The test is whether the employee's "primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer], which includes work requiring the exercise of discretion and independent judgment." *Id.* (quoting §§ 541.2(e)(2) and 541.2(a)(1)).

■ In their office managerial capacities, Hall and Poole directed the work of the CNAs employed by the Defendant. There is some dispute as to the exact extent of Hall and Poole's job responsibilities. However, Hall's own letters to her supervisors indicate that her job satisfies

the job duties test. Vol. IV, Exhibit Z–1, Z–2, Z–3. At a minimum, they were responsible for staffing the CNAs, assigning them to their patient visits, counseling the CNAs, and conducting interviews for CNA positions. Defendants' Motion for Summary Judgment Exhibits O, P, and Z–3 to Vol. IV; O–2, 3; P–1, 2 to Vol. I. These roles were directly related to the general business operations of S & S to provide in-home patient care and required independent judgment. As the Office Manager in charge of "run[ning]" the Galax office, Hall worked only under the general supervision of her supervisors. The evidence shows that Poole, as the Assistant Office Manager, had the same responsibilities as Hall. Finally, Hall and Poole base their claims on the nature of their job responsibilities and not the percentage of time they devoted to nonadministrative tasks. The Court therefore finds that plaintiffs Hall and Poole were both employed in a bona fide administrative capacity pursuant to 29 C.F.R. § 541.2.

## B. SALARY BASIS TEST

The Supreme Court has recently upheld the Secretary of Labor's interpretation of the salary-basis test. *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 910, 137 L.Ed.2d 79 (1997). This test denies exempt status "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* This "approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Id.* Plaintiffs claim that they are able to satisfy both the "actual practice" and the "significant likelihood" tests.

### 1. Actual Practice

The parties agree that the following impermissible payroll deductions occurred:

(1) February 2, 1996, Belton was docked 3 hours for being late due to weather conditions;

(2) August 3, 1995, Baumgardner was docked 4 hours for being late due to illness;

(3) November 2, 1995, Baumgardner was docked 5.5 hours for an absence due to illness;

(4) November 20, 1995 Baumgardner was docked 5 hours for an unspecified reason;

(5) September 14, 1995, Hall's pay was docked for a 6.5 hour absence;

(6) January 12, 1996 Baumgardner was docked 4.5 hours for not arriving to work due to weather conditions;

(7) January 17, 1996 Baumgardner was docked four hours for arriving late due to car trouble.

In the first five enumerated instances, defendants attempted to reimburse the plaintiffs on August 24, 1998. In the later two instances, the Baumgardner was reimbursed in February 1996, one month after the deductions occurred. The Court finds that the other deductions, claimed to be improper by the plaintiffs, did not occur. *See* Exhibit B–1 to Defendants' Reply Memorandum.

S & S also improperly docked employees other than the plaintiffs. From 1994 to the first quarter of 1996, S & S employees had seventy-three partial day absences. The employees received a full day's pay forty-seven times and their pay was improperly deducted twenty-six times. After the first quarter of 1996, when defendants realized that the FLSA "poses a trap for the unwary employer," only four improper deductions were made out of one hundred and seven partial day absences. Defendants' Motion for Summary Judgment at 8–9. In total, fifteen employees received thirty partial day deductions from 1994–97. Defendants' Reply Memorandum at 13.

The Court finds that the defendants had an actual practice of making impermissible

payroll deductions in violation of the FLSA.

### 2. Significant Likelihood

Plaintiffs also claim that the defendants had a

> clear and particularized policy that was effectively communicated to salaried employees that (1) their pay would be reduced for time out of work due to inclement weather no matter how many hours or days in the work week they had worked . . . and (2) a policy stating that the defendants would not make work available to a salaried employee who wished to return to work after a partial day's absence requiring that all salaried employees take any partial day absence in full day increment even though the employee is ready, willing and able to return to work.

Plaintiffs' Opposition Memorandum at 17.

The defendants' Bad Weather Policy states that "[i]f an employee is unable to get to work because of the weather, time off shall be counted as annual leave or leave without pay," and "[i]f an employee reports to work, they shall be paid for only the amount of time that they are actually on the job." Exhibit 4–B to Plaintiffs' Opposition Memorandum. Defendants claim that this policy only applies to non-salaried employees. In *Auer*, the Court noted that the purpose of requiring a clear and particularized policy is to avoid unanticipated overtime liability in "situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salary employees." 117 S.Ct. at 911; *West v. Anne Arundel County, Maryland*, 137 F.3d 752, 762–763 (4th Cir.1998). Although the Bad Weather Policy is not vague, it only refers to "employees." As in *Auer*, "[n]o clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as the [plaintiffs]." *Auer*, 117 S.Ct. at 911–12.

Defendants' Annual Leave Policy states: "Annual Leave must be taken in increments of full days." Plaintiffs argue that this policy effectively communicated to the plaintiffs that they were forbidden to take partial days absences even as salary employees. The Court does not agree. This policy did not hinder the plaintiffs, and other salary employees, from taking partial day absences. The record reveals, and indeed the plaintiffs admit, that S & S employees recorded partial day absences and a corresponding payroll deduction occurred occasionally.

### C. WINDOW OF CORRECTIONS

Even if an employer is found to have wrongfully docked an employee's pay, the FLSA provides the employer with a means to avoid liability: "where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." 29 C.F.R. § 541.118(a)(6). This is commonly referred to as the "window of corrections." The Supreme Court in *Auer v. Robbins*, 117 S.Ct. at 912, interpreted the regulation in the disjunctive and held that employers may avail themselves of the protection if wrongful deductions were *either* inadvertent or made for reasons other than lack of work. As a remedial provision, the window corrections should be construed liberally to give effect to its purpose. *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899, 904 (S.D.N.Y.1991).

Defendants' assert that the improper pay deductions were inadvertant or, in the alternative, made for reasons other than lack of work. Defendants point to payroll statistics indicating that employees received a payroll deduction only in the minority of instances in which they worked a partial day. The majority of improper payroll deductions occurred between 1994 and the first quarter of 1996. However, only four improper deductions were made

out of one hundred and seven partial day absences after the defendants discovered that deductions for partial day absences violated the FLSA. In total, fifteen employees received thirty partial day deductions from 1994–97. Defendants' Reply Memorandum at 13. The Court declines the defendants' invitation to divide the payroll deductions into two time periods. Defendants had the responsibility at all times to be familiar with and follow the employment standards set forth in the FLSA. The Court finds that the improper payroll deductions occurred with enough frequency and regularity that they cannot fairly be characterized as inadvertent.

The next question is whether the deductions were the result of the defendants' failure to provide work to the plaintiffs. Plaintiffs refer to specific instances in which a plaintiff received a payroll deduction and attempt to characterize those as the defendants' failure to provide plaintiffs with work. Plaintiffs first contend that the S & S offices close during inclement weather and construe this as a failure to provide the plaintiffs with work. Defendants, however, insist that work was always available and each plaintiff possessed an office key and could have gone to work. In light of the number of tasks the plaintiffs claim they were responsible for completing, the Court finds that the plaintiffs fail to allege sufficient facts to demonstrate that the defendants' inclement weather policy resulted in a failure to provide the plaintiffs with work. Even on a summary judgment motion, where the facts must be viewed in the light most favorable to the non-moving party, plaintiffs cannot rest on allegations not supported in the record. *Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) ("plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.")

Plaintiffs next advance the theory that the defendants' annual leave policy "effectively communicate[s] to plaintiffs that defendants refuse to make work available to them when they take a partial day's absence and want to return to work" and the employees are "ready, willing, and able to work." Plaintiffs' Opposition Memorandum at 15–16. Plaintiffs are unable to identify a single instance in which one of them was either sent home or went unpaid pursuant to this policy. In fact, the very heart of plaintiffs' complaint is their claim that they were required to work *too many* hours. Plaintiffs complaint requests an award of back pay for the claimed overtime hours of 1015.25 (Belton), 603 (Neely), 2446 (Baumgardner), 913 (Hall), 391 (Poole). The complaint also alleges that the defendants improperly deducted their pay for partial day absences. It is impossible to reconcile the claims of overtime and improper partial day deductions, on the one hand, and the defendants' failure to provide work under company's annual leave policy, on the other hand. The Court finds that the defendants' annual leave policy, even if it did apply to salaried employees,[1] did not create a significant likelihood of improper deductions.

Defendants' amended annual leave policy also runs afoul to the FLSA, according to the plaintiffs, because it states that "salaried employee[s] will most probably make up the time lost for the partial day's absence at some other time." Exhibit 4 to Plaintiff's Opposition Memorandum. Plaintiffs construe this as a rigid requirement forcing salaried employees to work the exact number of hours they missed. Defendants assert that the language used matches the intent of the FLSA. The Court agrees. The FLSA states that the employee "must receive his full salary for any week in which he performs any work

---

1. Defendants deny that the requirement to take annual leave in full day increments applied to salary employees but instead affected only non-salary employees.

without regard to the number of days or hours worked." 29 C.F.R. § 541.118(a). Implicit in this language is the expectation that salaried employees will work the necessary hours needed to complete the job. The amended leave policy does no more than reflect this underlying policy and it does not violate 29 C.F.R. § 541.118(a).

Finally the Court must examine whether the defendants reimbursed the plaintiffs for the improper deductions and whether the defendants promise to comply with the FLSA in the future. Defendants tendered a check to the plaintiffs reimbursing them for each improper payroll deduction. Defendants' Motion for Summary Judgment, Vol. 1, Exhibit Z. Plaintiffs, through counsel, refused to accept the offered payments. Exhibit 14 to Plaintiffs' Opposition Memorandum. The fact that the defendants only attempted to reimburse the plaintiffs after this litigation commenced does not preclude the defendants from preserving the plaintiffs' exempt status. *Auer*, 117 S.Ct. at 912. On January 1, 1998, with the advice of counsel, defendants memorialized a policy which prohibits S & S from deducting a salary employee's pay for partial day absences. Defendants' Motion for Summary Judgment, Vol. 1, Exhibit W–15. The Court finds that the defendants property attempted to reimburse the plaintiffs. Furthermore, the amended leave policy satisfies the requirement to promise to comply with the Act in the future. *See International Association of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Virginia*, 720 F.Supp. 1230, 1232 (1989) ("By revising its policy, the City has demonstrated its compliance with the regulation and its intent to comply in the future.")

In sum, the Court finds that the improper payroll deductions were not inadvertent but were made for reasons other than the defendants' failure to provide work to the plaintiffs. In addition, the defendants' subsequent actions allow the defendants to avail themselves of the window of correc-

tions. Accordingly, the Defendants' Motion for Summary Judgment as it pertains to the FLSA claims is GRANTED.

## II. FRAUD IN THE INDUCEMENT

Plaintiffs allege the defendants fraudulently induced them to sign a written employment contract, which contained a non-compete clause, only by orally promising that they would not be required to work overtime. According to the plaintiff, the defendants knew the plaintiffs would be required to work overtime, contrary to their statements. Defendants deny these allegations and move for summary judgment on the basis that, even if the statements were made, those statements could not rise to the level of fraud.

■ Plaintiffs must allege sufficient facts to prove, by clear and convincing evidence, that the defendants (1) made false representations of a present material fact, (2) such representations were made intentionally and knowingly to mislead the plaintiffs or to induce them to engage in their employment contracts, (3) the plaintiffs reasonably relied on such representations, and (4) the representations and reliance caused damage to the plaintiffs. *Bryant v. Peckinpaugh*, 241 Va. 172, 400 S.E.2d 201, 203 (1991).

Whether or not the plaintiffs were actually told that they would not have to work overtime is a material issue of fact in dispute and cannot be decided on summary judgment. For the purpose of determining whether defendants conduct was fraudulent the Court must assume the statements were made. Defendants contend that the statements were made with the genuine belief that the plaintiffs could complete their job assignments within a normal eight hour workday. Under that set of facts, plaintiffs would be unable to prove that defendants falsely represented a *present* material fact. Resolving this issue is, however, unnecessary in deciding the issue of fraud in this case.

Defendants also challenge the plaintiffs claim that they reasonably relied upon the defendants' representations regarding a lack of overtime. The written employment contract used by the defendants enable the employer to unilaterally change the terms and conditions of the employment:

7. The compensation, position and duties set forth herein may be changed by the Employer without detriment to the other covenants and conditions of this contract, which shall continue unchanged and in full force and effect.

Exhibit V, Vol. I of Defendants' Motion for Summary Judgment.

■ In *Doran v. Sigmon,* No. 97–0023–D, slip op. at 11, (D.Va. Oct. 21, 1997), the court was faced with the same issue under an employment contract with identical terms. The court held that "[i]n light of the clear language in the contract that the terms and conditions could be altered and that the employment was terminable at will, it would have been patently unreasonable to rely on the oral representations by the defendants." *Id.* This Court agrees with the holding in *Doran* and adopts its reasoning. Defendants motion for summary judgment as it pertains to fraud is therefore GRANTED.

## III. NON–COMPETE CLAUSE

Plaintiffs allege that the noncompetition clause violates Virginia public policy in restraint of trade. The clause states:

[e]mployee agrees that, during the term of this employment and for a period of (11) months after termination of employment, he or she will not, either directly or indirectly, within the area described as Roanoke, Franklin, Botetourt, Montgomery, Craig, Floyd, Parts of Radford, Roanoke City, Salem City, Giles, Pulaski, Wythe, Alleghany, Henry, Pittsylvania, Patrick Counties and contiguous areas.

(a) solicit or accept temporary personnel or home health care business from any person, firm or entity which was a client or referral source of Employer at any time during the eleven (11) months preceding the termination of employment;

(b) solicit the employment, attempt to employ or employ any employee on the permanent staff of Employer on the date of termination or employment, or any individual who performed or applied to perform home health care or temporary work assignments for Employer at any time during the eleven (11) month period preceding the termination of employment, or interfere with, dispute or attempt to disrupt the relationship between Employer and any of its employees.

■ Virginia utilizes a three-prong test to determine whether a noncompetition agreement violates public policy: (1) whether the restraint is no greater than necessary to protect the employer in some legitimate business interest; (2) whether the restraint is not unduly harsh and oppressive in curtailing the employee's legitimate efforts to earn a living; and (3) whether the restraint is reasonable from the standpoint of a sound public policy. *Roanoke Engineering Sales Company, Inc. v. Rosenbaum,* 223 Va. 548, 290 S.E.2d 882 (1982). Applying these principles the Court finds that the noncompetition clause is reasonable. The restraint only limits former employees from (1) soliciting or accepting home care business from clients or referral sources of S & S and (2) soliciting for employment or employing S & S employees for other employment. These restrictions clearly protect a legitimate business interest. The restrictions also do not significantly curtail the plaintiffs ability to earn a living. Plaintiffs Belton, Baumgardner, and Neely are free to provide nursing care to anyone who is not a S & S client or one of their sources of referral. Plaintiffs Hall and Poole are able to employ their office managerial skills to any number of wide ranging employment opportunities. The relatively short time period, eleven months, of the

restrictions further supports enforcing the noncompetition clause.

### IV. RETALIATION

Plaintiffs Belton and Neely allege that they became victims of retaliation after they filed suit against the defendants. In pertinent part, plaintiff's claim that "defendants took adverse employment actions against plaintiffs Neely and Belton by divesting them of certain marketing duties ... [which] enhanced plaintiffs' standing as professionals in the community...." Plaintiff Belton also claims that the defendants accused her of "insubordination and threatening Belton with termination and removing Belton from her Team Leader position in the Collinsville Office, which position was one of increased status and responsibility...." Plaintiffs Opposition Memorandum at 32.

It is clear that Belton and Neely were divested of their marketing duties as a result of initiating this lawsuit. Sandy Ward, in a report summarizing her meeting with Belton wrote "I agreed she was and could be professional, but that the lawsuit accuses Interim and the owners personally of Medicare fraud. I asked her how did she expect to resolve the conflict of having to tell contacts that we were wonderful and to ask them to patronize us, if indeed she felt the company was committing fraud?" Exhibit X–21 to Defendants' Summary Judgment. The question remaining is whether removing the marketing duties from Belton and Neely's job description qualifies as retaliation.

■ Section 215(a)(3) of the FLSA states that it is illegal "[t]o discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] ...." 29 U.S.C. § 215(a)(3). The plaintiffs must demonstrate (1) that they engaged in an activity protected by FLSA; (2) that an adverse employment was taken against them; and (3) a causal connection between the first two elements.

Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir.1997).

■ The Fourth Circuit has interpreted the phrase "adverse employment action" to focus only on "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir.1981). Removing the marketing responsibilities from Belton and Neely as well as divesting Belton of her Team Leader position did not constitute an ultimate employment decision when neither their pay nor their job titles were affected. See also Kocsis v. Multi–Care Management, Inc., 97 F.3d 876, 887 (6th Cir.1996) (demotion without change in pay, benefits, duties, or prestige insufficient). In addition, it was the plaintiffs' resignations which terminated their employment with the defendants. There is also Belton and Neely's broad allegation that they were unfairly subjected to false disciplinary actions after they initiated this lawsuit. However, plaintiffs are unable to point to anything in the record constituting an ultimate employment decision. Plaintiffs primae facie case is thus insufficient as a matter of law to constitute retaliation.

### V. DEFENDANTS' ALLEGATIONS OF FRAUD

Defendants allege that the plaintiffs engaged in fraudulent conduct while working for S & S and should be barred from pursuing their claims. Defendants claim that Belton and Neely recorded as hours worked identical times at both S & S and Danville Regional Medical Center. Not only were the recorded hours fraudulent but plaintiffs were also prohibited, according to the defendants, from working at Danville Regional Medical Center under the noncompetition clause contained in the S & S employment contract. Defendants also accuse Hall and Poole of forging Baumgardner's signature on the notes of the CNAs and the Home Care Supervisor (Baumgardner). Finally, defendants con-

tend that the number of overtime hours claimed by the plaintiffs are so incredible as to be false as a matter of law. Defendants refer the Court to *Doran v. Sigmon,* No. 97–0023–D, slip op. at 11, (D.Va. March 23, 1998), in which the plaintiff alleged that S & S violated the FLSA for failing to pay overtime. The court found that it was "inconceivable, if not impossible, that [the plaintiff] worked a normal forty hour work week, performed after hours physicals for another company *and* worked [the high number of overtime hours]." Defendants also point to the number of extra pay visits and on-call weeks Belton worked for which she received additional pay. However, since summary judgment has been granted in favor of the defendants on separate independent grounds, these issues need not be resolved.

### CONCLUSION

Having found that plaintiffs have failed to allege facts sufficient to prove fraud in the inducement, contract unconscionability, or retaliation and having further found that defendants properly availed themselves of the FLSA window of corrections, Defendants' Motion for Summary Judgment is GRANTED as to all counts in the plaintiffs' Amended Complaint. An order will be entered accordingly.

### ORDER

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants claim that the plaintiffs are exempt employees under the Fair Labor Standards Act ("FLSA" or the "Act") and are not entitled to overtime pay. Defendants also request summary judgment dismissing plaintiffs' claims of fraud in the inducement; contract unconscionability; and retaliation in violation of the FLSA. For

reasons set forth in the accompanying memorandum opinion, it is ORDERED that Defendants' Motion for Summary Judgment is GRANTED as to each count contained in plaintiffs' Amended Complaint and the Clerk is directed to strike the case from the docket of the Court.

It is so ORDERED. The Clerk is requested to send certified copies of this Order to all parties.