**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: FOOD LION, INCORPORATED, FAIR
LABOR STANDARDS ACT "EFFECTIVE
SCHEDULING" LITIGATION

JEFFREY L. ROYSTER; DANIEL BAKER;
CLARENCE L. ALSTON; CHARLES V.
STRICKLAND, JR.; RON MURCHISON;
LARRY BRITT; CARL WILLIAMS; TRUMAN
SURLES; TIM LAYDEN; KIM PIPPA;
JEFFREY BARNES; GLENN JOHNSON; STEVE
TWIDDY; LARRY RILEY; WAYNE NEIL
HAND, JR.; MICHAEL ALPHIN;
HARVEY KEITH MATTHEWS; TERRY N.
CONNER; JAMES E. DANIELS; BILLY
MADDOX; RUSSELL THOMAS; JONATHAN

ANDERSON; WOODROW BREEDEN; AARON                        No. 94-2360
NORRIS; JAMES GRUBER; REGINALD
ASHFORD; CLINTON E. BLOYER, III;
RICKY COLTREN; BILLY RAY COLLINS;
WILLIAM DALE FITZGERALD;
ROBIN DALE STEWART; STEPHEN A.
WILLIAMS; REGINALD GILL; LESTER
BRITT,
Appellants,

and

TERRY W. MCLAWHON, on behalf of
himself and all others similarly
situated; KEITH LAMONT PERRY, on
behalf of himself and all others
similarly situated; RONALD GRANNIS;

BOSTON D. MCCORNELL; RANDY E.
JONES; TIMOTHY E. PEELE; ANDY
CZUBAI; CHRISTOPHER AYDEN SURLES;
KELLY E. QUINN; JAMES L. ROYAL;
FRANCIS D. CARPENTER; GREGORY TODD
RING; LESTER JEROME MITCHELL;
RODNEY M. RAMSEY; WILLIAM RICHARD
HAMM; BILLY M. PARSON;
WOODROW CARROLL, JR.; BOBBY
GLYMPH; KEVIN CARR; BRAD CLARK;
BILLY WILLIAMS,
Plaintiffs,

v.

FOOD LION, INCORPORATED,
Defendant-Appellee.

In Re: FOOD LION, INCORPORATED, FAIR
LABOR STANDARDS ACT "EFFECTIVE
SCHEDULING" LITIGATION

RICKIE PRINGLE; CARLOS BRYANT;
BRUCE A. CLARK; STEVEN HARVEY,
Plaintiffs-Appellants,

and

RICHARD BISHOP; RONNIE HAWKINS;
QUENTIN SMALLS; LARRY BARNER;
RAYMOND BECKHAM; DAVID BENFIELD;
LARRY BLAND; WENDELL BROWN;
RONALD FELDER; KEN GALLMAN;
JONATHAN JOY; HENRY LONG; HOMER
MEANS; MELVIN MONTGOMERY; LARRY
PURVIS; S. JIM ROBISON; ANTHONY

No. 97-1443

SCOTT; DELORES SNELGROVE; JACK WEATHERFORD, JR.; CLYDE ASH, III; HEIDI BLECKLEY; JAMES "JIM" CRIBB; MAX HERRON; RICCI HOSKINS; KATHLEEN WEATHERSBY; ROBERT WILLETT, JR.; ROBERT BECKHAM; JIMMIE BLACKBURN; BRENDA BYRD; KENNETH CAPPS; LESLIE CLIFTON, III; HERMAN CURRENCE, III; DARREN DIEDRICH; DELORES EDWARDS; ERNEST EVANS; KENNETH GADDIST, JR.; BARRY HANNA; PATRICK J. KARLE, JR.; DAVID MCAULEY; DON MCCLARY; JAMES MCMANUS; ANTHONY MEFFORD; STUART MOKOWSKI; MICHAEL PRICE; ROBERT RAND; KENNETH REDMON; HAROLD RIDGEWAY; EDWARD ROBL; JAMES SCOTT; MITCHELL SHEPARD; BOOKER SMITH; CHERYL SMITH; THURSTON SMITH; DONNA K. SPIVEY; JOE C. SPIVEY; STEVEN SWANN; CHARLES TAYLOR; NOEL N. THOMPSON; BRETT TURNER; JOHN UPDIKE; JACKIE WELCH; HAROLD H. WILSON, JR.; HERBERT WRIGHT, JR.; TYRONE WRIGHT; VICTOR YOUNG, III; JOHN G. RICE; STEVEN B. SCOTT; JERRY W. MACKELDON; DORIS JEAN HARRIS; WILLIE JOE REDMOND; DARREN L. JONES; JOHNNY R. ADAMS; THOMAS C. ENGLISH, JR.; LLOYD S. MESSINA; JAMES ALBERT ASHLEY; BOBBIE RAY WEED; DAVID L. JOHNSON; WILLIAM J. GOFF; WILLIAM A. CARTER; RANDY K. BENTON; MARY B. JORDAN; RONALD E. CARRIGG; RICHARD ALAN BISHOP; GATLIN CLIFTON CRIBB; JULIAN M. RAMSUE; THADDIEUS J. DULEY;

3

ROBERT JOHN EDWARDS; JAY CORBETT;
GEORGIA LYNCH; JAMES HOGUE,
Plaintiffs,
v.

FOOD LION, INCORPORATED,
Defendant-Appellee.

In Re: FOOD LION, INCORPORATED, FAIR
LABOR STANDARDS ACT "EFFECTIVE
SCHEDULING" LITIGATION

JOHN GORE; WAYNE LOSCO; ALAN
O'NEAL; ALLAN SEIDL,
Plaintiffs-Appellants,

and

KERRY BUSHER; DOROTHY KAELIN;
JAMES HALL; JACOB HENDERON; MERRY
BURDEN; WILLIAM COLLINS; JOSEPH

FENDICK; STEPHEN JANOSICK; ARNOLD
LIVERMAN; JOHN O'LOUGHLIN;
RONALD J. ROLLO; HENRY WAYNE
CUMBESS; DAVID LECLAIRE; BRUCE
USERY; JOHN TIMMONS; ERNEST RAY
KING; DWAYNE KING; CHARLIE BOYD;
MARGIE HOLDEN; JOHN CUMBESS;
BARNEY RICK SMITH; KIMBERLY
LANTRIP; RICKY BEARD; ROY AUSTIN;
LOIS M. FOSTER; KELLY FROESE;
STEPHEN LENNON,
Plaintiffs,

No. 97-1444

4

v.

FOOD LION, INCORPORATED,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-91-133-4-F, MISC-92-198-5-F, CA-92-827-5-F,
CA-92-717-5-F)

In Re: FOOD LION, INCORPORATED, FAIR
LABOR STANDARDS ACT "EFFECTIVE
SCHEDULING" LITIGATION

DONALD T. LEDFORD; J. MICHAEL
OAKES, MICHAEL CARDOZA; R. CHUCK
VILLARREAL, JR.; ROY SARTER; LARRY
WORLEY; TOMMY ARRINGTON; BILLY
BAKER; CHERYL BORN; DANNY BUCKNER;
ROBERT CALLOWAY; DONA CATLIN; KIM
CAUDILL; JOSEPH COCKERHAM; MICHAEL

COFFEY; FELECIA COLEMAN; ROBERT
DALY; JAMES DARROW; CHRISTOPHER
DUNHAM; RHONDA DUPREE; ROBERT
DYER; FRANK EASON; RHONDA ENGLAND;
PAUL ERB; RICHARD FAWLKES; CHRIS
FRENCH; RICHARD P. HENSLEY;
ROGER ALLEN HILL; RICKEY HINSON;
TERRY HORTON; PATRICIA HOYLE;
CHRISTOPHER JOLLY; ALECIA JONES;
WILLIAM JOYCE; WELDON JUNGE; MONTY
LEE; PAUL LUCAS; SCOTT MATTOX;

No. 94-2645

KEVIN O'BRIANT; GARY O'NEAL; KIM
PAIVA; VICTOR PRONIER; RUSSELL
RAMSEY; JOE REED; ELVA JEAN RILEY;
SAMUEL SHERRIN; MARLIN SHUFORD;
RONALD STURGILL; JOSEPH SULTON; RICK
TRAVIS; LESLIE TUCKER; DEREK WHITE;
WARREN WHITE; TERRY WHITMIRE;
GARY WOODS; BURNELL G. WRIGHT,
Plaintiffs-Appellants,

v.

FOOD LION, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
James C. Fox, District Judge, sitting by designation;
J. Toliver Davis, Magistrate Judge.
(CA-91-184, MISC-92-198-5-F, CA-92-185-5-F)

In Re: FOOD LION, INCORPORATED, FAIR
LABOR STANDARDS ACT "EFFECTIVE
SCHEDULING" LITIGATION

C. MARSHALL HOLLAND, JR.;
CHARLES LEE SMITH;
WALTER CRAWFORD THOMAS, JR.;

WILLIAM BRIAN BAREFOOT; TONYA Y.
BROWN; ROSA BOND; EARNEST A.
BRYANT; WAYNE JAY COCHRAN;
WILLIAM A. COOKE; JEFFREY J.
GOERMAN; KEITH HARRIS; CHARLES S.
KNOWLES; FAYE LEE; JOHN M. LYNCH;
VERNON W. MENIFEE; BRUCE E. POPE;

No. 95-1274

BOBBY A. ROBERTSON; WARREN D.
ROMAN; KEITH W. TINGEN; HASKELL
TURNER,
Plaintiffs-Appellants,

and

DARRYL ELLIS; DEBBIE GARDNER; ERIN
RICE; KENNETH W. COOPER; ALAN E.
ERETT; DANNY LEEANDER PERSON;
JOE WILLIAM BAKER; PETER M. SLOKA,
SR.; JOHNNY ANDREW PUNCH, III;
ESTER M. WOODS; FRED MCMILLAN;
ISSAC RAY PACK; ALEXANDER J. SMITH;
STEVE J. KIRSCH; MARILYN S. WILSON;
VICKI ANN WOOD; PHILLIP LARRY
OLDHAM; TERRY A. YOUNG;
RICHARD W. MCDONALD; MICHAEL
WRENN; STEPHEN G. PARRISH;
RANDALL LEE RIGSBEE; DELORES EARP;
WILLIAM P. HASKINS; W. EDWARD
CAMPBELL; JOHN L. WALLACE;
CRAIG WILSON PRESSLEY; STAN M.
GRIFFIN; MARY PEEPLES; DAVID G.
MYERS; RANDY LAKE;
KENNETH RANDALL COOPER;
WOODROW WILLIAMS, JR.; ERIN RICE
ALBRIGHT; LEISHA BAYNARD; STEPHAN
PARRISH,
Plaintiffs,

v.

FOOD LION, INCORPORATED,
Defendant-Appellee.

7

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge;
James C. Fox, District Judge, sitting by designation.
(MISC-92-198-5-F, CA-92-503-2)

Argued: January 30, 1998

Decided: June 4, 1998

Before WILKINSON, Chief Judge, BUTZNER,
Senior Circuit Judge, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Senior Judge Butzner
wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey Todd Eddy, NESS, MOTLEY, LOADHOLDT,
RICHARDSON & POOLE, Charleston, South Carolina, for Appel-
lants. William Pinkney Herbert Cary, BROOKS, PIERCE, MCLEN-
DON, HUMPHREY & LEONARD, L.L.P., Greensboro, North
Carolina, for Appellee. **ON BRIEF:** John C. Davis, Kent Spriggs,
SPRIGGS & JOHNSON, Tallahassee, Florida, for Appellants. James
T. Williams, Jr., M. Daniel McGinn, BROOKS, PIERCE, MCLEN-
DON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this case we consider appeals from the district court's grant of partial summary judgment in favor of an employer and dismissal of the consolidated Fair Labor Standards Act overtime pay claims of numerous of the employer's salaried and hourly wage employees. For the reasons stated herein, we affirm the district court.

I.

In a previous opinion, In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litigation, 73 F.3d 528 (4th Cir. 1996) (published) (Hall, J.) (Butzner, J., dissenting), we recited the factual and procedural background of this case. This second narration is taken, almost verbatim, from our earlier opinion.

Beginning in 1991, several small groups of employees and former employees of Food Lion, Inc. ("Food Lion"), filed civil actions in Federal courts in a number of southern States in which Food Lion owns and operates grocery stores. In each of these actions, the plaintiffs asserted claims for unpaid overtime and penalties under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Hourly employees alleged that they were forced to work "off the clock" in order to finish the tasks for which they were responsible under Food Lion's company-wide scheduling system, and several assistant managers claimed that they were not exempt from FLSA's overtime provisions because the tasks they performed did not qualify as "managerial."

On June 13, 1992, the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") issued an order transferring two of these actions, one from the District of South Carolina (Scott ) and the other from the Western District of North Carolina (Ledford), to the Eastern District of North Carolina for "coordinated or consolidated pretrial proceedings"[1] with another action then pending there (McLawhon); all

_____

[1] 28 U.S.C. § 1407(a).

9

of the cases assigned to Judge Fox. The Panel thereafter transferred six tag-along cases[2] over the next five months. Judge Fox eventually had eleven separate actions before him.[3]

In October 1992, court-approved notices were sent to some 60,000 current and former Food Lion employees who had worked in stores in North Carolina, South Carolina, Florida, Georgia, Virginia, or Tennessee after October 16, 1989.[4] Almost one thousand of these employees (including the named plaintiffs in the eleven separate actions) opted into the litigation by returning "consent forms," and each employee returning a consent form was assigned a "court number." A master file was created in a consolidated case denominated In re: Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litigation, and each "opt-in" plaintiff was assigned to one of the individual cases.

In a series of pretrial orders, Judge Fox dismissed the claims of about half of the plaintiffs on summary judgment. On March 22, 1994, a "suggestion of remand"[5] was filed by the district court and forwarded to the Panel. On June 2, 1994, the Panel remanded eight of the actions to their respective transferor courts.[6]

After remand, one of the two cases remaining in the Eastern District of North Carolina was completed, and an appeal was taken by a number of the plaintiffs whose claims had been dismissed by summary judgment during the consolidated pretrial proceedings (the

_____

[2] See R.Proc.J.P.M.L. 1.

[3] In addition to two cases filed in his district, Judge Fox had before him a case from each of the other two districts in North Carolina, three from South Carolina, one from the Eastern District of Virginia, two from the Eastern District of Tennessee, and one from the Northern District of Florida. Although the Virginia case arrived in Judge Fox's court via a transfer of venue entered by the district court in Virginia pursuant to 28 U.S.C. § 1404(a), it was consolidated with the other transferred cases for pretrial matters and treated as if it were a § 1407 case.

[4] The limitations period for filing overtime claims is three years for willful violations by an employer. 29 U.S.C. § 255(a).

[5] See R.Proc.J.P.M.L. 14(c)(ii).

[6] The Virginia case was retransferred by an order entered by Judge Fox.

10

Royster appeal). At about the same time, some of the plaintiffs who had met a similar fate in Judge Fox's court, but who were part of cases from one of the two other districts in North Carolina, asked for and received Fed.R.Civ.P. 54(b) certifications for immediate appeal from the respective transferor district courts. These two appeals were consolidated with the Royster appeal, and we heard oral argument on October 30, 1995.

In our published opinion thereafter, we declined to reach the merits reasoning:

> Because there are numerous other plaintiffs who have not yet appealed but who were dismissed by the same district court on essentially the same grounds as one or more of the appellants, we believe that 28 U.S.C. § 1407, the multidistrict litigation statute, requires that the other dismissed plaintiffs have the opportunity to join in the appeals before us.

In re Food Lion, Inc., Fair Labor Standards Act"Effective Scheduling" Litigation, 73 F.3d at 530. Accordingly, we first held in abeyance the then-pending appeals from the three North Carolina districts. Second, we directed the Panel to retransfer from the District of South Carolina, the Northern District of Florida, and the Eastern District of Tennessee to the Eastern District of North Carolina those claims that were dismissed by Judge Fox prior to the June 20, 1994 remand by the Panel. Finally, we ordered the district court for the Eastern District of North Carolina, after retransfer, to enter final judgment as to all such claims, pursuant to Fed.R.Civ.P. 54(b) and to allow any appeals taken pursuant to such certifications to be heard in this court. Id. at 533.

After our remand and the entry of final judgments by the Eastern District of North Carolina in March 1997, seventy-one plaintiffs from two cases originally filed in the District of South Carolina and eight plaintiffs from the case originally filed in the Northern District of Florida took appeals which were consolidated with the earlier Royster appellants by Order of this court on April 22, 1997. We now reach the merits of all appeals.

11

II. THE FAIR LABOR STANDARDS ACT

Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires employers to pay employees time-and-a-half wages for hours worked over forty (40) hours per week. As the statute reads:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (West 1965 & Supp. 1997).

The plaintiffs' class alleged dual claims under the FLSA against Food Lion. First, certain salaried assistant managers of the employer charged that they were not exempt from the overtime pay provisions of the FLSA by virtue either of their salaried or managerial status and, second, certain hourly employees alleged that they worked "off the clock" and, thereby, were entitled to overtime compensation under the statute.

A. The Bona Fide Executive Exemption

The court below entered partial summary judgment against numerous salaried assistant managers at Food Lion by Orders of October 27, 1993 and November 5, 1993.

Under the FLSA, certain categories of employment are exempt from the statute's otherwise mandatory overtime provision. One such exemption, the "bona fide executive" exemption, provides:

> The provisions of section 206 . . . and section 207 of this title shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or pro-

12

> fessional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary. . . .)

29 U.S.C. § 213(a)(1) (West 1965 & Supp. 1997). Department of Labor regulations carefully define that which constitutes employment in an executive or administrative capacity. Two elements are required for that exemption. First, an employee must be paid"on a salary basis." 29 C.F.R. §§ 541.1(f), 541.2(e), 541.118(a) (1997). The regulations define payment "on a salary basis" as follows:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. . . . [T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (1997). Second, an employee's primary duty must be either management, administration, or a combination of both. Id. §§ 541.1(f), 541.2(e), 541.600(a) (1997).

The regulations provide a "short test" and a"long test" for determining whether an employee's primary duty is management. See Shockley v. City of Newport News, 997 F.2d 18, 25 (4th Cir. 1993); Murray v. Stuckey's, Inc., 939 F.2d 614, 617 (8th Cir. 1991), cert. denied, 502 U.S. 1073 (1992). The "short test" applies when the employee in question makes more than $250 per week. [7] Under this test:

_____

[7] The court below found and the parties agreed that all of the assistant managers made more than $250 per week. Thus, the"long test" for the bona fide executive exemption of 29 C.F.R. § 541.1(a)-(e) is inapplicable here. Rather, the "short test" of § 29 C.F.R. 541.1(f) governs the inquiry.

13

[A]ny employee . . . [w]ho is compensated for his services on a salary basis at a rate of not less than . . . $250 per week . . . and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of [the 29 U.S.C. § 213(a)(1) exemption].

29 C.F.R. § 541 (1997). As we have instructed previously:

Analysis of whether an employee's primary duty is management begins with determining which of the employee's duties involve management of a recognized department or subdivision of the employer. As a "rule of thumb," the employee must devote more than fifty percent of his time to these duties. . . . Other pertinent factors, however, may indicate that management is the employee's primary duty. Among the factors to be considered are: (1) the relative importance of the managerial duties as compared with other types of duties, (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

Shockley, supra, 997 F.2d at 25-26 (citing 29 C.F.R. § 541.103 (1992)).

Whether management duties constitute a primary job duty is determined on a case-by-case basis. 29 C.F.R. § 541.103 (1997). While "[t]he amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee[,] . . .[t]ime alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." Id.; Murray, supra, 939 F.2d at 618

14

(holding that time alone is not the sole test in determining whether the primary duties of an employee were "management" and upholding exemption even where employee spent a majority of time performing non-exempt[8] work). The quantitative fifty percent rule, in other words, is, as the regulations state, only a "rule of thumb." 29 C.F.R. § 541.103 (1997).

Because Food Lion raised the bona fide executive exemption as an affirmative defense to the assistant managers' FLSA claims, it had the burden of proof on that issue. Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986).[9]

B. Standards of Review

Whether a job duty qualifies as managerial or not is a legal question "`governed by the pertinent regulations promulgated by the Wage and Hour Administrator.'" Shockley, supra, 997 F.2d at 26 (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)). On the other hand, "the amount of time devoted to managerial duties, and the significance of those duties, present factual questions that we review for clear error." Id. (citing Fed.R.Civ.P. 52(a)) (other citations omitted).

C. Assistant Managers' Claims

Food Lion moved for summary judgment on the ground that each of the assistant managers met the bona fide executive exemption. In support of the summary judgment motion, Food Lion offered the affidavit of the Vice-President of Grocery Operations, Charles C. Buckley, and the store's assistant manager job description from the "Store Operations Manual."[10] In addition, the store offered individual assis-

_____

[8] "Non-exempt work" is work other than that which employees with management duties perform; it is performed by hourly employees who are not exempt from the overtime pay provisions of the FLSA. 29 C.F.R. § 541.111 (1997).

[9] Under the FLSA, an employer must prove that any exemption to the overtime provision applies. Proving the exemption is an affirmative defense; the statute assumes that an employee is covered.

[10] The Food Lion manual reads, in pertinent part:

JOB DESCRIPTION:   ASSISTANT MANAGER

15

tant managers' depositions which showed that the job tasks they actually performed were consistent with the affidavit and job description.

According to Buckley's affidavit and the manual's job description, assistant managers in each Food Lion store are primarily responsible for the operation of the Grocery Department, a division of the store. The Grocery Department accounts for some sixty-five percent of sales floor space in the typical store and oversees the sale of all Food Lion merchandise with the exceptions of produce, dairy, meat, frozen foods, and delicatessen products. An assistant manager supervises a Grocery Department manager, one or more full-time shelf "stockers," and numerous part-time stockers. A full-time stocker's maximum weekly pay is eighty percent of an assistant manager's minimum weekly salary. Among other duties, an assistant manager's duties include hiring and training stockers, training the Grocery Department manager, and evaluating the performance of other Grocery Department employees. In the absence of a Food Lion store's manager, the assistant manager is primarily responsible for overseeing the entire store. The typical assistant manager works about half of the time under such circumstances when the manager is absent. From 1986 to 1993, the lowest range for all the Food Lion assistant managers' weekly salary was $390 per week. In addition to the Buckley affidavit and job description, Food Lion also adduced evidence from individual stores' assistant managers to show that their particular job duties were consistent with those of the assistant manager position so described in the affidavit and Food Lion manual.

The district court found that Food Lion met its initial burden of producing evidence that the assistant managers met the managerial

_____

JOB OBJECTIVE: To assist the Store Manager to see that the Company customer service standards are met and to manage the total store in compliance with the policies, standards, security measures, and regulations of the Company.

AUTHORITY: Responsible for the total store in the absence of the Store Manager. Directly responsible for supervision and management of the Grocery Manager, the Scan Analyst, and HBA Clerk.

16

exemption to the FLSA. The court also denied the assistant managers' motion to strike the Buckley affidavit. The crux of these appeals by the assistant managers, then, is whether in adducing the Buckley affidavit and job description, Food Lion failed to offer proof that each individual assistant manager primarily performed actual managerial work consistent with the 29 U.S.C. § 213(a)(1) exemption. Related to this issue is the question of whether the court abused its discretion when it refused to strike the Buckley affidavit. We address the issues in reverse order.

1. Motion to Strike Affidavit

A district court's evidentiary rulings, including whether to strike an affidavit, are reviewed for abuse of discretion. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 511 U.S. 1006 (1994)). Appellants argue that the affidavit purports to state job duties of Food Lion assistant managers about which the affiant lacked "personal knowledge," as required by Fed.R.Civ.P. 56(e).[11]

As we stated in Evans, affidavits which accompany a summary judgment motion must contain "admissible evidence and be based on personal knowledge." Id. (citing Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)). They must not be conclusory or based upon hearsay. Id. (citing Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990); Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1252 (4th Cir.), cert. denied, 502 U.S. 939 (1991)). In Evans, we affirmed the district court's decision to strike portions of an affidavit filed in opposition to a summary judgment motion in a sex and age employment discrimination case because:

_____

[11] Rule 56(e) reads, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e) (West 1998).

17

> Several of the portions struck consisted of [the affiant's] own unsupported assertions of . . . the abilities of her colleagues. Because, again, we generally consider self-serving opinions without objective corroboration not significantly probative, the decision to strike . . . was not improper.

Id. We stated further that "[t]he district court determined that [the affiant], a low-level employee" would not have had access to the corporate information about which she testified and, appropriately, struck portions of her affidavit. Id. at 262 n.6.

Here, Vice-President Buckley, a high-level Food Lion employee, had directly supervised the assistant managers for seven years at the time he testified in specific detail in the affidavit about their job duties. As well, the information about which he testified was corroborated in the Food Lion manual's assistant manager job description. The Buckley affidavit met the requirements of Rule 56(e) in that it was not conclusory, did not contradict the affiant's earlier sworn testimony, and set forth specific facts of which the affiant had personal knowledge, rather than mere generalities. See, e.g., Barwick v. Celotex Corp., 736 F.2d 946, 960-61 (4th Cir. 1984). Because we cannot find that the district court abused its discretion when it found that the information recited in Buckley's affidavit derived from personal knowledge, we affirm the district court's Order of October 27, 1993 refusing to strike the affidavit.

2. The "Class Exemption"

Appellants assert that with the Buckley affidavit and job description, Food Lion only offered evidence of the job duties of a "hypothetical" assistant manager. The assistant managers maintain that an employer invoking the exemption from the overtime pay provisions of the FLSA must come forward with evidence that each employee actually performs exempt executive or managerial work, as claimed. In support of the proposition that classwide exemptions[12] are not per-

_____

[12] A "classwide exemption" exempts, in blanket-like fashion, an employee of a particular job classification from the FLSA's overtime pay provisions because of that employee's job's classification or title, irrespective of the facts of that employee's individual case.

18

missible under the FLSA, appellants cite Hodgson v. The Klages Coal and Ice Co., 435 F.2d 377, 382 (6th Cir. 1970) ("An employer seeking an exemption from the overtime requirements of the Act under 29 U.S.C. § 213(a)(1) must prove that each employee is entitled to the exemption by plain and unmistakable evidence.") (citation omitted), Mitchell v. Williams, 420 F.2d 67, 69 (8th Cir. 1969) ("[T]he employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act.") (citation omitted), and Brock v. Norman's Country Market, Inc., 835 F.2d 823, 826 (11th Cir. 1988). Appellants argue that Food Lion, by not offering evidence as to every individual assistant manager's actual work duties, effectively sought and received a "class exemption" for all assistant managers.

On this point, the appellants overlook two critical distinctions between the valid authority they cite and the instant matter. First, in addition to the Buckley affidavit and job description, here Food Lion did offer particularized evidence in the form of numerous assistant managers' depositions relating to their actual individual job duties, in support of its summary judgment motions. Second, it must be remembered that here appellants were proceeding collectively under the FLSA, 29 U.S.C. § 216(b), and, as such, had been determined to be "similarly situated" factually by the district court. Considering that the instant matter was an FLSA class action, the authority cited by appellants is distinguishable as no such case involved an FLSA collective proceeding. By offering the affidavit, the job description, and individual assistant managers' deposition testimony, we hold that Food Lion, not only met but exceeded its initial burden to come forth with evidence that appellants fell within the bona fide executive exemption. Such a holding is consistent with FLSA caselaw appellants invoke concerning non-collective actions. In a case with a fact pattern similar to the instant case's, an employer was deemed to have met its initial burden of producing evidence in support of the exemption by adducing only an affidavit from its vice-president articulating the general duties of its associate managers without a more particularized showing at that early stage. Dole v. Papa Gino's of America, Inc., 712 F.Supp. 1038, 1040 (D.Mass. 1989).[13]

_____

[13] Additional proof that Food Lion did not seek a classwide exemption is the fact that it did not move to dismiss every assistant manager claim. See, e.g., Ronald Rollo, a Florida plaintiff. Rather, it acknowledged that factual differences existed across the assistant managers' class.

19

Once Food Lion satisfied its initial burden to present evidence that the assistant managers met the bona fide executive exemption, the burden shifted to the assistant managers to offer evidence that they were not exempt from the act. Similar to Food Lion's evidence, the assistant managers made a "consolidated response" that included representative affidavits from some, but not all, assistant managers. The responsive affidavits stated that appellants remained covered under the act, notwithstanding the exemption, because they performed manual labor and other non-exempt duties and because the store manager was usually in the store and in charge when they were working.

The district court found that numerous of the post-notice assistant managers among the appellants had met their burden by presenting at least some evidence that their actual job duties varied from those recited in the Buckley affidavit and the manual's job description.[14] For this reason, the court denied Food Lion's summary judgment motion as to those assistant managers. The court, however, entered summary judgment against the remaining assistant managers because they did not rebut Food Lion's evidence and, thus, created no triable issue of fact as to the duties of those assistant managers.

Appellants correctly state that the issue of "[w]hether employees are exempt from the requirements of the [FLSA] is primarily a question of fact." Klages Coal, supra, 435 F.2d at 382. While this is true, the assistant who failed to attempt to rebut Buckley's affidavit and the Food Lion manual's assistant manager job description did not create a genuine issue of fact to survive summary judgment and send their claims to a jury. Accordingly, the district court properly granted Food Lion judgment as a matter of law and dismissed the claims of those assistant managers who did not adduce any evidence to counter Food Lion's evidence that appellants met the bona fide executive exemption.

_____

[14] These assistant managers used individual questionnaires, deposition testimony, and affidavits to counter Food Lion's evidence about the duties of assistant managers. The district court denied Food Lion's motion for summary judgment as to these appellants because they came forward with particularized evidence tending to rebut the Buckley affidavit and job description.

3. The Evidence of Managerial Duties

Assistant managers Rickie Pringle and Allan Seidl, Busher appellants, did file responses to Food Lion's summary judgment motion. They challenge the district court's grant of judgment as a matter of law against them. They contend that they did not have primarily managerial responsibilities at Food Lion and, thus, fell outside of the bona fide executive exemption.

In his deposition, however, Pringle himself testified that he, along with the store manager, was in charge of Food Lion's "effective scheduling" program in the grocery department. He testified that during about one-half of his working hours, he was in charge of the store without the store manager. During those periods, he would handle customer complaints, supervise the stockers, "keep an eye on the grocery department," and recommend disciplinary actions. While Pringle also typically performed non-exempt work during these same periods when he was in charge of the store in the store manager's absence, he did both the non-exempt work and the managerial work at the same time.

Assistant manager Seidl also filed a declaration as part of the appellants' consolidated response to Food Lion's summary judgment motion. In it, he states that only five percent of his time was devoted to managerial duties. Looking to the duties themselves, however, he admits that he listened to employee complaints, verified deposits, interviewed job candidates, wrote up employees for disciplinary problems, and supervised employees' work. Seidl states, however, that the grocery manager and customer service manager also would be able to perform such duties.

The evidence presented in the cases of the Royster appellants was of a similar nature. When asked how often he worked in the store without the manager, for example, assistant manager Oakes testified that "most of the time we were there together." Oakes apparently worked some fifty-eight hours per week. The store had three shifts, and the manager came in on the three "truck days" per week at five to six a.m. On those days, Oakes would close the store at ten p.m. and work another few hours setting up displays (which itself is non-exempt work). The two employees, then, overlapped only an hour or

21

two in the middle afternoon. Because one or the other employee had to cover some 126 hours per week, the two could not have worked together "most of the time." In any event, when Oakes was at the store in the absence of the store manager, he clearly was in charge and performing the store's "managerial duties" as that term is defined in the employer's regulations. Oakes kept an eye on his store's various departments, made sure people were working, and disciplined employees from time to time.

In assistant manager Junge's case, for instance, he testified in deposition that his and the store manager's work schedules overlapped approximately six hours a day, five days a week, from noon until six pm. In other words, given that Junge worked about sixty-five hours per week, for about half the work week Junge was in complete charge. Importantly, in terms of his managerial duties, he testified that his actual job duties were the same as those of a typical assistant described in the Food Lion manual. Junge dealt with customer complaints, gave constructive advice to other employees, and, in the absence of the manager, was in charge of the store.

The evidence as to the other Royster appellants, White, Lucas, Holland, Smith, Erb, and Pronier, was materially similar. Each appellant was in charge of the store in the absence of the store manager every working week. Each appellant supervised the work of other employees while on duty. While in charge of the store, each appellant handled complaints and problems in the store as they arose. Each appellant possessed authority to discipline co-workers and make employment decisions as to them.

Looking to the depositions of the various assistant managers, while the individual assistant managers' actual duties differed somewhat throughout the various stores, all were in charge to varying degrees and for varying periods when the managers were absent. The appellants were in sole command of the stores in which they worked about half the time. Although time is not the sole factor, of course, it is relevant to the determination that the appellants meet the managerial exemption to the FLSA's overtime provisions. Shockley, supra, 997 F.2d at 25-26; 29 C.F.R. § 541.103. The appellants all supervised stockers and Grocery Department personnel. While appellant Seidl counters that only five percent of his time was devoted to managerial

22

duties, he does not dispute that he periodically did supervise stockers and other personnel. In the seminal FLSA case involving assistant managers at a fast-food restaurant, the First Circuit stated, "The supervision of other employees is clearly a management duty." Donovan v. Burger King Corp. ("Burger King I"), 672 F.2d 221, 226 (1st Cir. 1982). As to Seidl's argument that his time spent in managerial tasks fell short of the "fifty percent" rule, that rule, again, is only a "rule of thumb." Shockley, supra, 997 F.2d at 26. An employee can be subject to the bona fide executive exemption "even though he spends the majority of his time on non-exempt work and makes few significant decisions. Burger King I at 226-27 (citing Rau v. Darling's Drug Store, Inc., 388 F.Supp. 877, 881 (W.D.Pa. 1975)) (other citations omitted).

To be sure, the assistant managers periodically performed some non-exempt duties such as stocking the shelves and unloading grocery trucks. The fact that an employee executes both managerial and non-exempt work tasks normally undertaken by hourly employees, however, does not preclude his qualifying for the bona fide executive exemption. Donovan v. Burger King Corp. (Burger King II), 675 F.2d 516 (2d Cir. 1982) (holding that fast-food restaurant's assistant managers were exempt under the bona fide exemption's short test despite large amount of non-exempt work performed). Conversely, appellants claim that their managerial responsibilities sometimes were performed by non-exempt hourly employees. This contention is of no moment because "the regulations do not provide . . . that an employee whose primary duty is managerial will not qualify for exempt executive status because other, non-supervisory employees are able to and sometimes do perform his or her managerial duties." Stuckey's, supra, 939 F.2d at 618 n.2. Finally, the assistant managers argue that during the time that the store manager was absent, the assistant manager in charge was merely a glorified stocker with the store manager available by telephone to make important decisions that might arise. On this point, the Second Circuit has held that when the record shows "that for the great bulk of their working time,[a]ssistant [m]anagers are solely in charge of their restaurants and are the `boss' in title and in fact[,] . . . [t]hat the . . . manager is available by phone does not detract in any substantial way from this conclusion." Burger King II, supra, 675 F.2d at 522.

23

For the reasons stated and after careful review of the record and the applicable law, we conclude that the actual job duties of the appellant assistant managers were primarily managerial. The district court properly granted summary judgment against them on their FLSA overtime claims.

III. CASE MANAGEMENT DISMISSALS

The hourly employees of Food Lion appeal certain of the district court's case management decisions resulting in dismissals of their claims. In a class action, review of a district court's dismissals for case management reasons is for abuse of discretion. See, e.g., Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993) ("Issues of class action manageability are properly committed to the district court's discretion, because that court `generally has a greater familiarity and expertise' with the `practical . . . and primarily . . . factual' problems of administering a lawsuit `than does the court of appeals.'") (quoting Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977) (en banc) (other citation omitted). With respect to multi-district litigation, as here, we have instructed, "a district court needs to have broad discretion in coordinating and administering multi-district litigation." In re Showa Denko K.K.L-Tryptophan Products Liability Litig.-II, 953 F.2d 162, 165 (4th Cir. 1992).

A. Late Consents

The district court established a January 4, 1993 cutoff date for persons wishing to opt in to the "Effective Scheduling" litigation. Three would-be plaintiffs, Royster, Murchinson, and Mattox, missed the cutoff by several days and were dismissed. Appellants Gore, Losco, O'Neal, and Seidl also failed to file consents by the appointed deadline.

Appellants' sole argument on appeal on this point is nothing more than that the FLSA is remedial and should be stretched to allow in as many such claims as possible. The prerogative of the district court to manage its docket with timetables and deadlines, however, prevents even remedial statutes from stretching to the breaking point. It cannot be gainsaid that the district court was clear about its cut-off deadline. On October 20, 1992, the district court, when it authorized the opt in

24

notice, set a cut-off deadline for persons wishing to opt in on December 31, 1992 (later extended to January 4, 1993). The court stated that late opt-in forms, absent a showing of "exceptional circumstances," would not be considered by the court and such persons sending tardy forms would not be in the class. As the court simply stated, "whoever gets in by the 31st of December is in. Whoever who's not in is not in. That's the end of it." Transcript of October 16, 1992 conference at 37.

Several appellants (Losco, O'Neal, and Seidl) later filed affidavits attempting to establish "exceptional circumstances" as an excuse for their untimely filed opt-in forms. Losco claimed that he mailed his consent form on the appointed date; O'Neal stated that his father was terminally ill when he received the opt-in form and that he mailed the consent after his father died; and Seidl asserted that, after a period of time spent out of town, he completed and mailed the form upon his return. As far as Losco's having mailed his consent only on--not before--the deadline, we have stated in another context that the "litigant who decides to rely on the vagaries of the mail must suffer the consequences." Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996). With respect to the court's decision declining to find exceptional circumstances accounted for the other tardy consents, we cannot say that the court abused its discretion. See, e.g., Hoffman-LaRouche, Inc. v. Sperling, 493 U.S. 165, 172 (1989) (holding that a district court is empowered to establish "cut off dates to expedite disposition of the action."). To the extent to which appellants additionally assert that the district court abused its discretion when it dismissed, with prejudice, the claims of the tardy consent filers, sanctions in such a circumstance properly may include dismissal. See Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir. 1985).

B. Imperfect Questionnaires

In May 1993, the district court sent out questionnaires, approved by plaintiffs and defendant, that it required each of the almost one thousand pre-notice and post-notice plaintiffs to complete, notarize, and mail to plaintiffs' counsel by June 11, 1993. Plaintiffs' counsel was then required to pass the questionnaires on to Food Lion's attorneys by June 25, 1993. The court had approved use of the questionnaires in order to streamline discovery of post-notice plaintiffs,

25

provide basic information about each plaintiff's claim, and, thereby, to spur possible settlement negotiations. The court's order alerted the plaintiffs that failure to comply with the above deadlines could result in the dismissal, with prejudice, of the plaintiff's claim.

Many would-be plaintiffs missed the return deadline or sent in incomplete forms (e.g., forms which lacked proper notarization) or the wrong forms (e.g., in April 1993, plaintiffs' counsel had their clients fill out questionnaires for counsel's own use and many plaintiffs wrongly mailed these forms). The district court gave each plaintiff who failed to return a questionnaire or completed the wrong questionnaire an opportunity to show cause by August 2, 1993 why his form was untimely or incomplete. Those plaintiffs who did show cause were not dismissed. The district court found, however, that many claimants did not proffer viable explanations, if any at all was proffered, and entered dismissal orders against them.

Three appellants, Harvey, Bryant, and Clark, failed to submit notarized questionnaires to plaintiffs' counsel by June 11, 1993, and failed to complete and forward the questionnaires to Food Lion before the June 25, 1993 deadline. As well, Bryant and Clark failed to submit timely, properly sworn and notarized explanations in response to the court's show cause order as to why they were late in the first instance. While the three appellants' personal circumstances at the time may explain the tardiness of their questionnaires and may entitle them to some degree of sympathy,[15] because we review the district court's rulings on this point for abuse of discretion, we do not find that the appellants are entitled to legal relief. Given that this consolidated action had almost one thousand claims in the beginning of proceedings, this court will afford the district court significant latitude in its

---

[15] Harvey asserted that he was traveling at the time he received the court questionnaire. He stated that although the questionnaire arrived at his house in South Carolina and was forwarded to him by his wife in a timely manner, he never received it. Nevertheless, even after he did receive the questionnaire, he delayed three weeks before submitting it. Clark stated that he traveled because of his job and was out of town for seven days at the time the questionnaire arrived. Bryant asserted that he had moved around the time the questionnaire was sent and that his mail was not forwarded to him.

handling of pretrial matters and in its case management directives. The court acted within its discretion when it dismissed the claims of the non-complying appellants. Rabb, supra, 769 F.2d at 1000 (holding that failure to comply with a discovery order warrants dismissal).

C. Statute of Limitations

The statute of limitations for an FLSA action claiming unpaid overtime compensation is two years, except that a cause of action arising out of an alleged willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C.§ 255(a) (West 1985 & Supp. 1998). By Orders of October 18 and October 27, 1993, the district court applied the three year statute of limitations period.

1. Post-Notice Hourly Employees

Five opt-in hourly employees wrote in their consents to join the suit that their alleged uncompensated overtime work had occurred more than three years earlier. The district court dismissed these five employees' claims entirely on statute of limitations grounds.

Appellant Surles, for example, said in his consent, which he filed in December 1992, that he last worked "off-the-clock" in February 1989. In his case, however, only his questionnaire--not his initial consent form, his first "pleading,"--alleged unpaid overtime at any time three years before the filing of his consent. This allegation in the questionnaire alone is not enough to avoid the limitations bar when his consent form alleged no unpaid overtime within the previous three years. Accordingly, the court did not err in dismissing his claim.

The remaining opt-in plaintiffs were rightly found to have been time-barred because they did not clearly allege when they worked overtime without pay.[16]

_____

[16] Appellant Barnes quit in December 1990 and filed the consent in December 1992. Appellant Pippa presented no evidence of having worked overtime within the limitations period. Appellant Ramsey was assistant manager within the limitations period and, thus, would have had no viable off-the-clock claims. Appellant Williams' evidence did not clearly state when he worked off-the-clock.

27

2. <u>Named Hourly Employee Plaintiffs</u>

Again, causes of action under the FLSA have a three-year statute of limitations period; claims for overtime cannot extend back past three years. The district court began counting from the date when each plaintiff filed his consent to opt in to the litigation. Included in this ruling were six named plaintiffs in the original suit. Instead of counting from the date the complaint was filed, the district court also required them to file a consent within the limitations period. The six named plaintiffs who failed to file timely consents now argue their consents relate back pursuant to Fed. R. Civ. P. 15(b) to the date the complaint was filed or, alternatively, that consents are not required of named plaintiffs.

The precise wording of two sections of the FLSA indicates otherwise. As section 16(b) of the FLSA states, in relevant portion:

> [An] action to recover [unpaid overtime] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. <u>No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.</u>

29 U.S.C. § 216(b) (West 1965) (emphasis added). As section 7 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 256, additionally states:

> In determining when an action is commenced for the purposes of Section 255 of this title, an action . . . shall be considered to be commenced on the date when the complaint is filed; <u>except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, . . . it shall be considered to be commenced in the case of any individual claimant--</u>
>
> (a) <u>on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a</u>

28

> party plaintiff is filed on such date in the court in
> which the action is brought; or
>
> (b) if such written consent was not so filed or if
> his name did not so appear--on the subsequent
> date on which such written consent is filed in the
> court in which the action was commenced.

29 U.S.C. § 256 (West 1985) (emphasis added).

Case authority has interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. "Until a plaintiff, even a named plaintiff, has filed a written consent, []he has not joined in the class action, at least for statute of limitations purposes." Songu-Mbriwa v. Davis Memorial Goodwill Indus., 144 F.R.D. 1, 2 (D.D.C. 1992) (citing and quoting 29 U.S.C. § 256(a)) (other citations omitted). Moreover, signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed. Kuhn v. Philadelphia Elec. Co., 487 F.Supp. 974 (E.D.Pa. 1980), aff'd, 745 F.2d 47 (3rd Cir. 1984). Rather, each claimant's "action is commenced on the date on which his or her consent is filed with the court." Id. at 976.

Had this action been brought simply as an individual case with several plaintiffs, there would have been no need for any consents to have been filed. The filing of a collective action under 29 U.S.C. § 216(b), however, renders consents necessary, and these claims below were brought in just such a fashion--they were brought on behalf of the named individuals and others similarly situated. Redundant though it may seem to require consents from the named plaintiffs in a class action, the district court did not abuse its discretion in ordering such consents nor in dismissing the appellants' claims which exceeded the limitations period when no consents were filed within the applicable three year period.

IV.

For the foregoing reasons, the district court's grant of partial summary judgment in favor of Food Lion on the FLSA claims of numer-

ous assistant managers and its dismissal of various claims of hourly employees who failed to comply with certain case management deadlines, shall be and hereby are

AFFIRMED.

BUTZNER, Senior Circuit Judge, concurring in part and dissenting in part:

I join in affirming the district court's case management dismissals. The district court's task was extremely difficult and cumbersome, and it acted well within its discretion to strictly enforce the administrative deadlines.

I dissent, however, from the methodology used by Food Lion to prove its right to summary judgment. An employer bears the burden of proving the affirmative defense that employees fall within the exemptions established by the Fair Labor Standards Act. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1966). To carry its burden of proof, Food Lion relies upon an affidavit given by Charles Buckley, the vice president of grocery operations. Food Lion also relies upon the assistant manager's job description in its "Store Operations Manual." Neither of these submissions meet the standard of Federal Rule of Civil Procedure 56(e), which requires the personal knowledge of the affiant. Buckley had at one time supervised assistant managers in the grocery department, but he does not demonstrate that he knew the jobs of each of the assistant managers in this case. He had no personal knowledge of how they spent their time on a day-to-day basis. Similarly, the Store Operations Manual describes only a hypothetical assistant manager's duties.

The job performed by each assistant manager should have been considered on a case-by-case basis. 29 C.F.R. § 541.103 (1997). Evaluation of an assistant manager's work is intensely factual. Dalheim v. KDFW-TV, 918 F.2d 1220, 1226 (5th Cir. 1990) ("[T]he inquiry into exempt status under [29 U.S.C. § 213(a)(1)] remains intensely fact-bound and case specific."). I cannot accept Food Lion's claim that the assistant managers failed to rebut the Buckley affidavit or the Store Operations Manual job description. The burden is not on the

30

employee to establish that he is not entitled to a management exemption. On the contrary, the burden remains on the employer to prove that the employee is exempt. Evans v. McClain of Georgia, Inc., 131 F.3d 957, 965 (11th Cir. 1997). Food Lion's methodology of proof stands the Fair Labor Standards Act on its head.

Food Lion, however, claims that since this is a class action, all assistant managers are similarly situated with those who gave depositions.

The assistant managers are similarly situated to the extent that they bear similar titles and they all work for Food Lion. But whether their day-to-day jobs are similar depends in large part on the authority and discretion granted to them by the store managers and by the individual's ability to execute managerial responsibilities."Section 213(a)(1) does not provide a class exemption . . . ." Hodgson v. Klages Coal & Ice Co., 435 F.2d 377, 384 (6th Cir. 1970).

Title 29 U.S.C. § 216(b), upon which Food Lion relies, provides for an employee class action with opt in provisions. The class action provision and the "similarly situated" requirement in § 216(b), however, are procedural. See Allen v. Marshall Field & Co., 93 F.R.D. 438, 441-42 (N.D.Ill. 1982). The similarly situated requirement is not meant to change the substantive protections under the FLSA. It does not alter the employer's burden of proof or the rule that the Act's exemptions must be narrowly construed against the employers seeking to assert them. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). The "similarly situated" requirement of § 216(b) is "considerably less stringent than the requirement of Fed. R. Civ. P. 23(b)(3) that common questions `predominate.'" Heagney v. European American Bank, 122 F.R.D. 125, 127 n.2 (E.D.N.Y. 1988). The plaintiffs need show only that their positions are similar to that of the putative class, not identical. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). Class treatment is not defeated even if the class members performed different jobs in different geographical locations. See Heagney, 122 F.R.D. at 127; Allen, 93 F.R.D. at 443. An employer should not be allowed to use the similarly situated requirement of § 216(b) to meet its burden of proving a FLSA exemption.

Moreover, a party moving for summary judgment must show that there are no genuine issues of material fact in dispute and that the

31

party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The Buckley affidavit does not prove that each individual assistant manager primarily performed managerial duties as the Act's exemption requires. <u>See</u> 29 U.S.C. § 213(a)(1). The assistant managers who were deposed and other assistant managers who proceeded on affidavits submitted facts sufficient to disclose genuine issues of material fact concerning the work that they actually performed.

Dissenting, I would reverse the grant of summary judgment to Food Lion for two reasons--the deficiencies in its method of proof and the presence of genuine issue of material fact. I would remand these cases for trial in their respective districts. 28 U.S.C. § 1407(a); see <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 118 S.Ct. 956 (1998).

32